Mr. Congleton appeals the district court's decision-granting summary judgment on his claims that he was wrongfully terminated and denied promotion based on age, and that he was wrongfully denied severance due as a matter of contract. Washington law applies to this case. This case was alleged under Washington state law. It is in this court because defendant PCL removed the case to the federal district court. Turning to the wrongful termination claim, the issue on review is, did the district court err in dismissing Congleton's claims of wrongful termination based on age, given evidence that Congleton was over 55 and had 14 years of experience with PCL on high-profile jobs and favorable reviews? All 32 available positions were given to younger persons, and the employer's alleged nondiscriminatory reasons for termination contradict its stated reasons for termination and its previous assessment of Congleton's performance. This question requires the court to apply the Reeves, which is the United States Supreme Court case, and Hill, the state court, Washington Supreme Court case adopting Reeves, a formulation of proof necessary to defeat summary judgment. The inquiry is whether Congleton has presented facts sufficient for the jury to find age bias. PCL conceded Congleton's ability to prove a prima facie case. With it, they have conceded that he can prove his performance was satisfactory and that an available position for which he was qualified was necessary. And so they say, OK, we're not going to we're not going to quibble about that. He meets his prima facie case. OK, so then they say, but, you know, age didn't play a factor here. Right. Age didn't play a factor. We fired him because we let him go because we were out of work. You know, work was wasn't enough work available for everybody. And two, we let him go because we chose him because he's a poor performer. Correct. So, you know, you look at that. So they say so he comes back and he says, well, that's just nothing but a pretext. All right. Now, in some cases, you can rely on the prima facie case if it's a strong one. But otherwise, you need to come back with a little bit more evidence. And he attempts to do that here. So why why is there a a a genuine material factual dispute either over over the pretext issue that they get either one or both? Sure. Let me begin by commenting on responding to your comments regarding the prima facie case, and then I'll answer directly the question that you have posed. Yes, employers regularly give up on the prima facie case in making motions for summary judgment because they view it as a minimal threshold showing. And they don't want to argue that they want to argue the ultimate burden question. Actually, they probably don't want the district court judges to grant summary judgment on that, because if they do, they, you know, they've got a hard row on review. Right. But as it happens in this case, their concession of the prima facie case was a recognition that certain facts that were part of the prima facie case would ultimately defeat their nondiscriminatory reason for that they're going to offer for termination. And those facts were the satisfactory performance of the of Mr. Congleton and the available position. And so that's why their concession. The prima facie case ultimately trips them because they're recognizing that at the end of the day. So, Mr. Congleton comes. They say performance. Mr. Conklin couldn't have been my performance. Right. Because you never said that when I worked for you. First of all, when you let me go, there's a dispute over what happened at the time they let him go. He says that they never, that, who was the fellow that let him go? Olsgaard. Mr. Olsgaard. Olsgaard? Yes. Never said anything about performance. Correct. He said lack of work. Correct. I don't think that's even a dispute. I think Mr. Olsgaard. So, you know, there's some cases talking about shifting reasons suggest that, you know, pretext might not be. Right. Well, I think what Hill and Reeves tell us is that if the stated reason for discrimination is proved to be not the actual reason for termination, that is a sufficient basis to go to the jury, absent an exception that I'll come to in just a couple of minutes. So the question is, has Mr. Congleton met that burden, and does the evidence that he proffered in his prima facie case help him do that? And I think the answer to that is yes. And turning first to the first ground for termination that is offered by the defendant, and that is lack of work, the answer to begin with is lack of work only justifies this termination if there is a finding that his performance was deficient. Because PCL has to concede there were available positions around the country, and they regularly hold people on overhead to be assigned to future projects. I mean, it's a project-based business. They're not selling refrigerators here. They're building buildings, so they have to wait until a building comes available to manage. And is there evidence in the record that Mr. Congleton was a good performer, such a good performer, that it would justify his retention despite lack of work? If you stipulate for a moment there was lack of work. Oh, yes. There seems to be a pattern that you got moved around within the company somehow. What evidence is there, other than the profiler, which we'll get to in due course, other than the profiler, what evidence is there in the record that suggests that he was a good performer? Well, I think to start with, he's been in the business for 30 years, in business like this. He worked there for 14. He was assigned to some of their biggest projects, $100 million-plus projects. That tells you something about what PCL thought of him. Ted Cook, the person who made the judgment about who was going to take this position on IDX, said, yes, he was qualified to do this job. So there's no question PCL believed him, a capable project manager on large projects. That's the way it stood when he started IDX. During IDX, he gets the positive profiler right smack in the middle of it that is uniformly positive. Frankly, it is high praise for a capable long-term employee of PCL. During IDX, he doesn't get any written criticism at all, notwithstanding PCL's policy that if you're not doing well, if you're in trouble, you're supposed to get a written policy. He doesn't get that. He doesn't get any oral criticism either. So the record, undisputed record, is what PCL has said about Mr. Congleton's performance is uniformly positive. And what it has done about Mr. Congleton's performance, promoting him, giving him the biggest jobs, is uniformly evidence that he was a very qualified employee. Now, with that backdrop, PCL concedes that they regularly hold people on overhead until a new job opens up. They transfer them to other locations. Mr. Congleton said, I was open to a transfer. I told them that twice during the time I was working on the IDX project. And so PCL has to accept, yes, there was work available if he's a good performer. So really the lack of work objection or criticism collapses into was he a good performer or not. Who are these? I know the allegation is that there were younger people that were substituted for him. Who were these people and what were their ages? Well, there are 32 of them in our brief. Thirty-two that took his place? Well, he finishes the project. Now it's time for him to move on. No, no one replaces him on IDX. IDX is done. So now the question is, is he going to go somewhere else? And there are, around the country, 32 different positions that open up. And we've listed them all in our brief. What about here? What about within? In Seattle itself, I don't think there is any project. Within the region, I believe the answer is there are six. But I know that that's in our brief and I can't give you the precise projects. But what the record shows, and I think what the jury ultimately has to weigh, is whether one of those 32 positions around the country should have been Mr. Congleton's. Because every single one of them went to a younger person. And what ages are we talking about here? Well, once again, Your Honor, we've arrayed them all in our brief. But they range from, I'm going to say, 32 to I think there may have been someone in their 50s. But I think if you look at most of them, you'll see most of them are in their 30s and low 40s. So what we find here is that the stated reason for termination, which is lack of work, collapses to deficient performance because if he's a qualified performer, there is work. And so turning to the question of, I think where I started all this was, has Mr. Congleton met his burden to show that the stated reason for termination is not in fact the actual reason for termination? One other thing about the stated reason, you know, the form that they filled out, it had the box checked, is the employee eligible for rehire, and they said no. That's correct. And they come back and say, huh, you know, performance what? We wouldn't have checked that but for performance. Right. And that would be an interesting question for the jury, and they can explain why they checked that box. But the part they don't want to talk about is the much bigger part of that form, which allows them to check the box for deficient performance. And it's right smack in the middle of the form, and they didn't check it. And they can't now say, well, you should have known it was performance, because even though we didn't check the box for performance, we checked this other box in the corner that says that you aren't qualified for rehire, so we really meant to check the box. The fact of the matter is they didn't check the box. But, frankly, what becomes even more important is in this session with Mr. Congleton, in which they tell him you're being, we're firing you, and Mr. Congleton says, well, this is age discrimination. Now is the time for Mr. Olsgaard to say, no, Jay, this isn't about age. You messed up the IDEX project and your performance is lousy, and this is why perhaps you wouldn't use that word. But he would make that point and say, no, it's not age. But he doesn't, because it wasn't really what he was thinking. What he says is nothing. He lets that pass, and they stick to their lack of work justification. The only time they come up with this performance justification is in this lawsuit. It's a strategy the lawyers have developed to defend a decision that they can't defend based on the law. Roberts. Did you ever establish when this form was actually filled out? Was it filled out before he met with Mr. Congleton, or was it after he met with Congleton? I don't have the answer to that, Your Honor, but I'll try, when I get back up here, a brief reply to give you the answer to that question. Okay. Sorry to sidetrack you off here. Right. I was talking about whether or not Mr. Congleton has met his burden of stating or demonstrating that the stated reason for termination is not the actual reason for termination, and therefore the jury must be given the opportunity to conclude that the real reason was bias. And I was commenting about the fact that, on the one hand, the record is consistent. Mr. Congleton had, in PCL's eyes, been a capable performer, given the most difficult jobs and deemed qualified by senior people, and that no one had ever criticized his performance in writing or orally. And now PCL says, well, even though we never said any of that, we actually were thinking that he was not a very good performer, and, in fact, he's the reason we lost all this money on the IDX project. And so they submit, even though we didn't say that, that the jury shouldn't be allowed to hear this case because our internal assessment of him, however expressed to him, is a conclusive evidence that we really weren't biased based on age at all. And that quite simply fails, Your Honor. It doesn't come close to meeting the burden that Reeves and Hill identify for PCL in this circumstance. Because what Reeves tells us is, when you prove that what the defendant said isn't the real reason, that's enough to allow the jury to infer that the real reason was illegal, because the employer had the chance to say what it was. And when they didn't say what they really meant, that tells the jury that you – that may not really mean it. Well, okay. So here you are. You filed this lawsuit. You do all this discovery, and it gets to the district court judge. Correct. And the district court judge says, at least as I understand what the district court judge said, he didn't say there's no dispute of fact. No. He found the facts. Well, he found some facts. I mean, I have problems with that, but that's neither here nor there. I mean, but he said, looking at all this evidence, looking at all this evidence, and, you know, even by some of his – what he did, suggesting there might have been some disputes here, he said, hmm, looking at all this evidence, it just doesn't cut it. Just doesn't – no triable – no reasonable trier of fact would ever agree with Mr. Congleton. Why – you can do that on summary judgment. I mean, you shouldn't, you know, unless you're pretty darn certain. Better to say that there's no triable issue of fact. As a matter of law, you're entitled to judgment. So what was wrong with the district court judge doing that here? I mean, why – there's real low direct evidence of age discrimination. Well, there is a – You know, they can't point to anything, oh, you know, they don't want any gray hairs around here. You know, we need the young squad. There's a little bit of direct evidence in the comment from Mr. Congleton. Very little. I mean, I couldn't – we looked – They wanted younger people. They wanted to bring young people. It's high and low for any direct evidence, and it doesn't seem to be – you don't need direct evidence. Fair enough. But that – frankly, what you just said, Your Honor, is the point. You don't need direct evidence. Circumstantial evidence, according to the Supreme Court, is sufficient. And so what the judge did – what's wrong with the judge's decision is two things. As a matter of law, the judge had to apply Heal. And the key question under Heal and ultimately under Reeves is when the plaintiff has offered evidence showing that the stated reason was not the actual reason, which Mr. Congleton did, the question now is, is this nonetheless a case in which there is undisputed evidence that the reason really wasn't age? And that's what the judge has to focus on. Is that this case? Is this the unusual case in which we're sure that notwithstanding what Mr. Congleton has showed, it really couldn't have been age? And on that question, the judge fell far short because PCL's stated reason, its real reason, is not subject to any kind of independent verification. It's what Mr. Olsgaard had in his head, his own internal assessment of what he thought, not what he said. And so there's no way a jury or judge can ever conclude, well, I think Mr. Olsgaard is right about that. I think it really was Mr. Congleton's fault that they lost this money. It really was – he really didn't like what Hines said. You can never have confidence that – the whole point of trials is to allow the jury to hear Mr. Olsgaard explain what he thought that, hear Mr. Congleton explain it, and judge, well, do I really think this internal assessment from Mr. Olsgaard, yeah, he should have written it down, yeah, I don't know why he didn't put it in the profiler, but I believe the man. I believe he's really telling the truth. The jury can make that searching inquiry and judge whether he is telling the truth, but only the jury can do that. And what judge – what the district judge had to do to find for PCL here was find critical facts against Mr. Congleton to begin with. And in a critical fact, the district court judge said that the profiler was not a review and was not evidence of Mr. Congleton's strong performance. And that's simply wrong. There's no basis for the district court judge to make that factual finding. The jury – if you look at the profiler, it's 39 pages long. It is extremely detailed. It has judgments from peers. It has judgments from supervisors. It covers all aspects of his performance, and it's pretty uniformly positive. You simply can't discard that evidence of what PCL thought and say, well, I'm not going to consider that as evidence that, in fact, this fellow is a very capable employee. So he made that judgment that he was not permitted to make. Just as bad as that, he made the judgment that the fatal error comment that's been offered, the only statement that PCL has ever offered of evidence of what Mr. Olsgaard or PCL said that was critical of Mr. Congleton, he found that that statement occurred when Mr. Congleton swore under oath that it did not. And Mr. Congleton pointed to the fact that the profiler, which was done at the same time, gave him a four on the surprises question. So there was a deeply controverted question of fact about whether that fatal error comment was ever made, and the district judge found that it was. I want to switch you to a different subject here for a moment, and that's the severance claim. Yes. In your brief, you cited Simon and Powell. Those two cases deal with discretionary bonuses basically paid to long-term employees, and they represented a significant portion of those employees' income. Do you have any cases holding that making a severance payment to employees on a general basis constitutes an implied contract for severance pay? Well, Your Honor, I think that the contract is a question of fact, and we have to look at what happened in this case. And I think the testimony, the short answer you asked me for cases and the answer is I can't give you the purple cow case that addresses these facts, but I can say that Mr. Dahl said that every single employee in this circumstance at PCL gets severance. I think the ---- But in return for a release. Isn't that correct? That's true, Your Honor, and that's an interesting argument. Why would he choose to sign the release? Well, the reason he ---- I'll just offer this. I don't think it's in the record. I'm sure the reason he refused to sign is that he was going to sue them for age discrimination and didn't want to sign a release of a claim that he would have. But, frankly, the question of the significance of the release was never litigated on PCL's motion. So we would have quite a bit to say about that. But they never ---- their argument on ---- the argument in the trial court about the severance was much more about does it cover the earlier period or not. And there was an issue of fact about that. And it morphed into this release question in the reply brief, and that was really not the basis for the ---- But there are no cases that you're aware of. No. I think it's a factual question, Your Honor. You have to look at these facts and ask is a contract proved or is it not proved. Okay. Well, Your Honor, I did. You've got about a minute and a half for rebuttal. I'll give you two minutes. Thank you. Good morning, Your Honors. If it pleases the Court, Tim O'Connell on behalf of the defendant appellee, PCL Construction, putting the accounts at the table. It's Ms. Molly Daly. Your Honors, Judge Martinez got it right, and I'm not going to waste the Court's    going through the law. You know the law. Let me just jump straight to the issue that you raised, Your Honor. The key question here is did plaintiff raise a material fact dispute that the reasons advanced by PCL are pretext? And I respectfully submit that he did not. And I will deal with this question of whether the judge found facts or not. But on this question of whether there are material facts in dispute as to pretext, the answer is no. And let me give you three overriding rationale why. The first is plaintiff's consistent theme that we advance inconsistent stories here. Counsel, would you please keep your voice up? I will try. Thank you. Thank you. Counsel's theory, repeated theme, that we have advanced inconsistent statements of the reasons for this termination, and that is simply incorrect. That's the Aragon case, that if we're going through a period where there is a lack of work, the fact that we evaluate the performance of the personnel at issue to decide who is going to get the work, there is nothing inconsistent about that. To say that Mr. Olsgaard may not have said it at the termination meeting, there's a dispute of fact that will accept Mr. Congleton's allegations for the purposes of this motion. That doesn't disguise the undisputed fact that immediately afterwards, when Mr. Olsgaard prepared his after-the-fact memo memorializing the conversation long before there was litigation, he specifically raised the question of performance. Had Mr. Congleton alerted them that he was likely to sue by that time? Again, Your Honor, for purposes of summary judgment, we have to accept that that's what he said. And again, for purposes of summary judgment, we have to accept that Mr. Olsgaard said nothing in response. And those are the well-pleaded facts. But after that, he comes up with that. He — Well, one could infer, you know, wow, hey, there's going to be a lawsuit. We better — we better, you know — Well, I think — — take steps to protect our record here. The point you raised about the statements made on the exit interview summary, I think, respond to that as well. I think what the evidence in the record shows is that Mr. Olsgaard did fill out the box that says lack of work and checked the not eligible for rehire at the same time. The evidence in the record is that was done contemporaneous with the exit interview. Can I just interject in what Judge Fizer said here? I'm a little unclear about when the profiler was completed. Was it prior to October 15, 2001? I know there was an October 10, 2001 date on the cover sheet. Right. That doesn't say when the questions were distributed and when the answers came back. When was that? Your Honor, all anybody can say is that it was done in the fall of 2001. We simply cannot be more specific than that. The face sheet says October 10. We know that it was sent to this outside vendor to process all of the different people's input and it wasn't returned to PCL until January of 2002. But it's simply not possible, not just on the state of this record. I don't think either side can get more specific than fall of 2001 and we've never said anything. And what's the purpose of the profiler? The record was confusing to me about that. What is the purpose of the profiler? The undisputed evidence in the record is that PCL does not do performance appraisals per se. The profiler is a developmental tool. It does not attempt to create an evaluation of the employee so that we could use that performance appraisal to say, well look, Annie Kerr got a better profiler than Mr. Congleton, two employees. So therefore, we're going to keep Kerr. That's not the use at all. Was it ever used that way? It was not. For anybody? There is no evidence in the record whatsoever that the profiler was ever used in that way. That's undisputed. That's Mr. Dawes. Some idea of how other employees and supervisors perceived his performance. And all of that is culminated in the profiler. Now, plaintiffs throughout this case has focused on Mr. Olsgaard's contribution to the profiler. And the issue there is that Mr. Olsgaard's profiler contribution is attempting to have Mr. Congleton focus on the areas that he needs to develop. It's a developmental tool. It is not something that you can compare across the employee population. But as against the various attributes that each employee is exercising at the time. Let me just ask you, you know, you mentioned the form that they filled out, check the box, not eligible. He points to, Mr. Congleton points to the McKenna and Jackson termination forms. And there they check, is employee eligible for rehire? No. Then they go down to discharge. And they make it abundantly clear. Failure to perform project management duties in accordance, duties in an accurate and timely manner. Unable to perform project manager responsibilities. Unsatisfactory performance. Unsatisfactory performance. Suggest, one could infer from that, if they're really going to let you go for unsatisfactory performance, they're going to note it down. Three responses. On the form. And that's a reasonable inference that on summary judgment has to be drawn in favor of the non-moving party. I'll disagree with that last one, and let me tell you why. There's three different reasons for that. My understanding of summary judgment rules. First off, both of those individuals are younger than Mr. Congleton. And so I, with all respect, no reasonable fact finder can conclude from the fact that PCL treated younger people harsher than it treated Mr. Congleton. No, no. Not that they treated them harsher, but that when they decided to let somebody go and it was performance was involved, they made it abundantly clear performance was an issue. It is not any evidence of discrimination to treat differently situated people differently. All I'm saying is that inference. The undisputed evidence in the record is that both McKinnon and Jackson were let go solely because of performance. There was no attribution of a lack of work with those individuals. What difference does that make? Well, because, Your Honor, in point of fact, the lack of work was the direct immediately contributing factor that Mr. Congleton is separate at that time. There is no, there is nothing false about lack of work. It was true. IDX was finished. We didn't have more work for him. Now, why did we not place him elsewhere? For all the performance reasons, we acknowledge all throughout. But there's nothing false about the lack of work. To follow up on the question that Judge Smith placed to counsel, in point of fact, the status of the Seattle District is undisputed. We went from three senior project managers to one, from three construction managers, the higher level position, down to two, with one of them being ready to be transferred momentarily at the time we made our motion. Let me tell you why it concerns me, because you quote the Hill-Reeves doctrine. And that basically it says if the district court judge has conclusive proof, this goes back to Judge Pius' question, you can grant summary judgment. But because of the inferences that can be drawn, how can you claim that PCL presents conclusive proof in this case? Because, Your Honor, when you look item by item by item at all of the things that Mr. Congleton wants to cite to you as saying I was a good performer and the comments about my performance are untrue, item by item by item, they are not supported. By the undisputed evidence in this record. But isn't that for a jury to decide? Didn't the judge himself make some findings that should have gone to the jury? You know, Your Honor, I concur that Judge Martinez went further than he perhaps should have and certainly further than he needed to in his comments about the profiler. In point of fact, the profiler, whether it is a performance appraisal or not, does not get at the – does not get to the issue that, first off, it's a year and a half before he is terminated. Secondly, it is – and all of the comments made by plaintiff direct towards Ed Olsgaard's information in the profiler. He's the same person who makes the decision to terminate him. So plaintiff is faced in the same situation as we sometimes see in the same actor cases. The same person who supposedly ranked him, plaintiff would have us believe accurately so well, in October or fall of 01, subsequently makes the decision to terminate him. Why is that? There's no inference to be drawn of age from that. And then you look at the various other factors that plaintiff has cited to say there is disputed facts as to my performance. And there's a couple that counsel just raised that I really feel the need to respond to. First off, his comment that we know that Mr. Congleton was a good performer because he was assigned to substantial projects such as IDX. We know it is undisputed in the record that Mr. Congleton was assigned to that project in large part because we believe the developer was going to have a personal friend of his, of Congleton's, working on the project. And we thought that that would facilitate it. We also know from the record that the management team placed him there because they believed he was going to be supported by a stronger construction manager.  Counsel wants to tell you that there's no written criticism as called for by PCL's policies. With all respect, that is a mischaracterization of the record. I would direct you to ER 451, in which Mr. Donnell is very specific, that while we try to give written warnings, we reserve the right to terminate. Excuse me. I just misspoke. I bought into the same mistake. While we try to give warnings, we reserve the right to terminate at any time. And there is nothing in the record suggesting that PCL has a policy requiring written warnings, and, in fact, that's just not the case. Does it provide written warnings, though? Putting Congleton aside for a moment, does it provide written warnings to employees that it doesn't feel are performing properly? Your Honor, there just is no evidence in the record at all that that is the practice. Even outside the record, I'm asking you as their counsel, what is their policy? You know, I can't say, Your Honor. Oh, you don't know. I don't know. They'll go through the trouble to do a profiler with all that's involved with that, and yet they don't bother to prepare a record about employees. That's a little hard for me to believe. Because the profiler is used for different purposes. It is not used to evaluate the client. It's used as a developmental tool. And, in fact... What does that mean? To assist... Are you saying that the ECL superior would sit down with the employee and say, let's go over what we found here. How can we improve your performance? Is that what you're telling me? Yes. That's precisely right. Is there anything in the record that suggests that that happened with Mr. Congleton before? There is nothing in the record one way or the other. You've been with him for a long time, haven't you? Yeah. The profiler is not something they do on a regular basis. It was a developmental tool. When did they start using the profiler? Your Honor, it is not in the record, and I can't tell you the first time they used it. Okay. Let me respond very specifically to the question that he never received any criticism. Counsel is expanding dramatically on one line in his declaration. He did not satisfy his burden under 56E to come forward with specific facts. Because, in point of fact, the undisputed testimony is to the contrary. In Mr. Congleton's deposition, which is in the record, ER 250, he was specifically told that Mr. Olsgaard would treat him, Congleton, as though he had personally lost the money whenever he was doing the forecasting. He testified in his deposition, again in the record at 250, that his conversations with Ed, that's Ed Olsgaard, the President in the room, led him to believe that he, Congleton, was going to be the fall guy for this project everyone knew was a disaster. And finally, let me respond to something that I think is unacceptable, is counsel's statement that Judge Martinez found that this fatal error comment had been made. I'm sorry? Counsel's statement that Judge Martinez found, as a matter of fact, that the fatal error comment had been made. In point of fact, that was never disputed below. It was asserted, it was an undisputed fact, and indeed, if you look at the transcript of oral argument, it's in Supplemental Excerpt of Record at page 80 to 81, Judge Martinez asked Mr. Dayton about the fatal error comment. And in fact, his question was, wouldn't that have been sufficient grounds to terminate in and of itself? And counsel's response was, that spoke about criticism about the fatal error comment, the court asked if that was sufficient to, of its own, as a basis to terminate, yeah, it probably was. That was Mr. Dayton's comment to the trial court. If you read the entirety of the transcript at pages 80 and 81 in the Supplemental Excerpt of Record, never deny. If you look at their briefing below, never deny. When we're actually making the record below, the undisputed statement was from Ed Olsgaard that he had told him about the fatal error. So to the degree that Judge Martinez found something that is plaintiff now disputes, that's an invited error, if there is an error. I'm not sure I understand that argument. Well, that wasn't disputable. I'll take a look at it. It wasn't disputable. I'll take a look at that particular statement and see if I can follow that. And finally, to say that there's no criticism of him is blind by their briefing  When you look at page 12 of their reply briefing, Mr. Congleton concedes that he was criticized for the episode in the district meeting in which the project is being reviewed, and he, 15 minutes before Mr. Olsgaard and his boss goes before their bosses, he writes the project down by an extra $300,000. He concedes that he was criticized for that, for him to say that he was never given any warnings or comments or criticism about his performances in error. How do you respond? You know, let me ask you this. You know, Reeves, the U.S. Supreme Court's recent case, and Hill, Washington Supreme Court, which quotes Reeves. Absolutely. They both, in the context of summary judgment, and Judge Nelson alluded to it just a minute ago, but it goes on. The quote that is, you know, you always have we always look at when I'm doing a summary judgment motion in one of these employment-related cases, because we have said in the Ninth Circuit that very little evidence on the part of the plaintiff is needed to first establish a prima facie case, and as well as for summary, you know, to get around, to get over summary judgment. And the Supreme Court, I mean, both the U.S. Supreme Court and the Washington Supreme Court really sort of bring that home when they say an employer would be entitled to judgment as a matter of law, summary judgment, if the record conclusively revealed some other nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted independent evidence that no discrimination had occurred. And, Your Honor, I think we fall under that precisely. The undisputed evidence that is in the record is abundant that PCL had a reasonable, honest belief that Mr. Congleton's performance was insufficient. You know, that's this whole issue about the prima facie case. Did we concede it was satisfactory? Performance is not a yes or no. It is not a you're doing great or we need to fire you today. There is a range there. And PCL had abundant evidence about Mr. Congleton's relatively, at least, unacceptable poor performance on that project. That's not disputed. What is the material fact? The material fact is, did the decisionmaker have an honest belief about the nondiscriminatory reason? And there is abundant evidence, uncontroverted evidence. Well, Your Honor, what his claim is, is that age played a factor in this decision. There's no evidence of that. The one thing that counsel just said. Well, there's no direct evidence of that, but you don't need direct evidence in order to get to a jury. No direct evidence? One can hear it, but not hear say it. Circumstantial evidence. Thank you. Circumstantial evidence can be sufficient. Circumstantial evidence can be sufficient, but it has to be evidence that, in fact, the employer's reason is unworthy of belief. And there is no evidence. He points to a number of different things here that one could infer that age was a factor. Now, whether he's going to ultimately prevail on that is another question. That's not for us to look at. Absolutely. And the question is, is the inference that he asks you to draw a reasonable inference within the evidence that was submitted to the trial court? And the answer is no. No rational finder of fact, and I think that's the standard that Hill Court refers to, could look at this evidence and conclude that PCL, which had a project that was budgeted to make over a million dollars and, in fact, on Mr. Congleton's watch, ended up losing well over $2 million, that PCL had an honest belief that his performance was unacceptable. And for all the reasons we've identified in our briefing, when you come forward with the specific evidence that plaintiff wants to put before you to show that he was a good performer, that evidence is not supported in the undisputed record. I mean, Your Honor, yes, circumstantial evidence is acceptable, but if plaintiff kicks up a lot of dust, we don't have to accept counsel's representation that, in fact, all that dust is smoke, so there must be some fire. No, you're correct. There are rules that we follow, though, for purposes of summary judgment. You take all you draw all inferences in favor of the nonmoving party. You look at the evidence in light most favorable to the nonmoving party. We're in the context of a employment-related case. And then we look at what is the undisputed evidence on the record. And here is, as Judge Yu noted and Judge Nelson noted, with respect to the profiler, the district court judge made certain, you know, he probably went too far, as you said, but he also did that in other places as well. We went over the form. And he, you know, with that, he goes on to say he makes a finding. I don't see how. Plaintiff argues that the fact that his termination notice only mentioned the lack of work, not poor performance, demonstrates that the performance issue is now offered as mere pretext. And then the judge goes on and says, however, the omission of poor performance from the termination letter was for plaintiff's benefit. Well, that is the undisputed rationale. That's a finding by the district court. Well, I don't disagree. It's not a necessary finding. The undisputed rationale. They're not supposed to do that. Well, I suppose that's what we're here for. It is an unnecessary finding. If I could just respond very briefly to the question you raised about the severance  Go ahead. The counsel's wrong. The issue of whether the severance pay would be conditioned upon the execution of a release was raised in our opening papers. Look at excerpt of record, page 35. We put it in evidence from the very opening motion here. The fact that Mr. Congleton did not respond because he cannot respond, that was our invariable policy. You're not going to find a case to respond to Your Honor's question suggesting that the plaintiff is able to pick one part of a policy and assert a contractual claim and ignore the other part of the policy. You take it all as it is. PCL's policy was invariable. We treated him accordingly with that policy. He has no claim for severance pay. And the policy was you sign the waiver, we'll give you the severance. Correct. Thank you. Thank you. Your Honor, I'll briefly respond and answer any questions that the Court may have. Beginning with the question of what the, whether the plaintiff concedes that the fatal error comment was made. The answer is no.  I believe in the sworn testimony from Mr. Congleton that he was never, he never received any criticism, significant criticism while he worked at PCL. And that responds to the fatal error comment, the alleged fatal error comment. There was colloquy, I page back through my copy of the transcript, there was colloquy at the end of the oral argument about whether a fatal error could be a ground for termination. And I think I indicated that fatal errors can be grounds for termination. They can be performance-based grounds for termination. The plaintiff has never agreed that the fatal error comment was made. And, in fact, we fairly strongly argued that that wasn't, that whatever they may have thought was not the ground for any action that they took. And we took that position in the trial court and we took that position in this court as well. So let me make sure I understand. You're saying you, in the colloquy with the district court, you may have agreed that a fatal error could be grounds for termination, but that you never admitted, nor did your client ever admit, that there was a fatal error that was the predicate for this dismissal? Correct. Or even that they even said that there was a fatal error that was made. The other issue that I wanted to respond to is that counsel quibbles about whether PCL found Mr. Cook, sorry, Mr. Congleton qualified to run this very large IDX job. And in case the Court doesn't know, it's that big office building down the street, 50-some stories. And Mr. Cook's unqualified testimony and deposition was, yes, Mr. Congleton was qualified for that job. That was PCL's position. And it didn't change until this lawsuit was filed. Thank you. Thank you, counsel. We appreciate all your arguments. They're very helpful. And the matter will proceed.
judges: D.W. Nelson, Paez, Smith